UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| PENNY J. SPENCER,<br>(Social Security No. XXX-XX-4886),<br><br>          Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)    4:09-cv-127-WGH-RLY<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM DECISION AND ORDER**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, upon the Consents filed by the parties (Docket Nos. 7, 9) and an Order of Reference entered by then-District Judge David Frank Hamilton on November 24, 2009 (Docket No. 12).

**I. Statement of the Case**

Plaintiff, Penny J. Spencer, seeks judicial review of the final decision of the agency, which found her not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB"), Supplemental Security Income ("SSI"), or Child Disability Benefits ("CDB") under the Social Security Act ("the Act"). 42 U.S.C. §§ 416(e) & (i), 423(d), 1381; 20 C.F.R. § 404.1520(f). This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff applied for DIB and SSI on November 10, 2005, alleging disability since January 1, 2001; Plaintiff also applied for CDB. (R. 64-65, 471-73,

483-86). The agency denied Plaintiff's application both initially and on reconsideration. (R. 480-81, 488-90). Plaintiff appeared and testified at a hearing before Administrative Law Judge Larry Temin ("ALJ") on May 8, 2008. (R. 502-32). Plaintiff was represented by an attorney; also testifying was a vocational expert ("VE"). (R. 502). On July 18, 2008, the ALJ issued his opinion finding that Plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform a significant number of jobs in the regional economy. (R. 15-25). After Plaintiff filed a request for review, the Appeals Council denied Plaintiff's request, leaving the ALJ's decision as the final decision of the Commissioner. (R. 7-9). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a Complaint on September 21, 2009, seeking judicial review of the ALJ's decision.

## II. Statement of the Facts

### A. Vocational Profile

Plaintiff was 27 years old at the time of the ALJ's decision and had a high school education. (R. 24-26). She has no past relevant work. (R. 23).

### B. Medical Evidence

#### 1. Plaintiff's Impairments

Plaintiff was hospitalized with nausea, diarrhea, and vomiting on November 2, 2000, and a potential diagnosis of Crohn's disease was discussed. (R. 319-20).

Following evaluation by Steven Pletcher, M.D., Plaintiff was found to have small bowel narrowing compatible with Crohn's disease. (R. 153-54). On

November 28, 2001, Plaintiff underwent an ileal cecectomy (excision of part of small and large intestines) for her Crohn's disease. (R. 143-44). Five days later, on December 3, 2001, she was discharged from the hospital with instructions that she could walk, climb stairs, ride in a car, and shower, and she could drive when she was not taking pain medication. (R. 138-39).

On December 7, 2001, Frederick G. Shedd, M.D., Plaintiff's surgeon, reported that she was making "an uneventful recovery." (R. 312).

By January 7, 2002, she was "doing quite well," she was having one to two soft stools per day, denied any abdominal pain, nausea or vomiting, and her doctor indicated that she could return to work with a 15-pound lifting restriction for one month. (R. 155). At a March 4, 2002 doctor's visit, Plaintiff reported having no pain or cramping. (R. 156).

On September 5, 2002, Plaintiff reported experiencing some vague discomfort in the right lower quadrant, which Dr. Pletcher thought was consistent with constipation. Plaintiff reported no nausea, vomiting, or change in appetite or weight. Dr. Pletcher noted that Plaintiff's Crohn's disease was in remission, and he recommended a follow-up examination in one to two years, or as needed. (R. 160).

On August 12, 2003, Plaintiff went to the emergency room with complaints of abdominal pain, vomiting, diarrhea, and nausea. (R. 175-85). After undergoing laboratory testing, she was prescribed medication (R. 177) and

discharged home in stable condition, with a diagnosis of abdominal pain – acute (R. 176).

On June 29, 2005, Plaintiff told Dr. Pletcher that she had eaten a meal at Taco Bell and had experienced abdominal pain associated with diarrhea four to six times a day for the past three weeks. (R. 163-65). She also reported that she had moved into a new home three weeks earlier and was concerned that the well water available at the home might be contributing to her illness. (R. 163). Dr. Pletcher noted that she had undergone surgery for treatment of Crohn's disease over three years earlier and that she had "not had any sequelae since then." (R. 163). After examining Plaintiff, the doctor, noting that her condition did not appear to represent a recurrence of Crohn's disease, prescribed medications, recommended a low-roughage diet, and suggested that she have her well water tested before drinking any more of it. (R. 165).

On July 3, 2005, Plaintiff went to the emergency room with complaints of abdominal pain and nausea after eating at Taco Bell three weeks earlier. (R. 211). On July 4, 2005, Plaintiff was admitted to the Columbus Regional Hospital with complaints of nausea and vomiting for the past several weeks; Dr. Pletcher noted a history of Crohn's disease with possible small bowel obstruction. (R. 222-23). Plaintiff's pain was described as moderately severe. (R. 222). She smoked one pack of cigarettes a day. (R. 222). She was advised to avoid roughage. (R. 222). On July 9, her obstruction had resolved, and she was released with a prescription for steroid medication. (R. 220-21).

Later on July 25, 2005, she was again seen in the emergency room with complaints of abdominal pain, nausea, and diarrhea, as well as back pain, and was later discharged in improved condition. (R. 241-45).

On January 19, 2006, Plaintiff was seen in the emergency room, with complaints of abdominal pain and vomiting after eating Chinese food. (R. 233-40). A history of Crohn's disease was noted, as was the fact that Plaintiff was seven and a half to eight weeks pregnant. (R. 235). She was discharged home in improved condition with a diagnosis of acute abdominal pain, eight-week pregnancy, and blood in the stool. (R. 238).

On February 27, 2006, J. Theodore Brown, Jr., Ph.D., performed a consultative psychological examination of Plaintiff at the request of the State agency. (R. 246-48). As part of the examination, Dr. Brown administered the Wechsler Adult Intelligence Scale-III, which revealed a verbal scale IQ score of 81, a performance scale IQ score of 80, and a full scale IQ score of 79. (R. 247). Dr. Brown concluded that Plaintiff's intelligence was within the low average to borderline range relative to people of her age. (R. 247). Regarding her current level of functioning, Dr. Brown stated that she could dress, bathe, and groom herself. (R. 247). She and her husband did the cooking, cleaning, laundry, and shopping, and her husband managed their money. (R. 247-48). She was able to drive, she had friends, and her family relationships were good. (R. 248). Her hobbies and interests included swimming, being with her family, and bowling, and she spent her days watching television and reading. (R. 248). Dr. Brown

diagnosed cognitive disorder, not otherwise specified; and borderline intellectual functioning. (R. 248). He assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 55 to 60.[1]

On March 8, 2006, when she was 14 weeks pregnant, Plaintiff was seen in the emergency room with complaints of vomiting, diarrhea, and abdominal cramps. (R. 325-33). She was diagnosed with probable hyperemesis gravidarum (severe morning sickness) that was possibly related to a viral gastroenteritis or an exacerbation of her underlying Crohn's disease. (R. 327).

On April 5, 2006, Dr. Pletcher reported that Plaintiff was 18 weeks pregnant and reported vomiting; she had a due date of September 5. (R. 287-89). He noted that she had experienced periodic Crohn's exacerbations over the past several years and was most recently admitted in July 2005 with small bowel obstruction; she recovered "okay" but then experienced "nausea vomiting delay after meals about two times per month," but, since she became pregnant, the frequency of nausea, vomiting, and abdominal distension had increased to three or four times a week. (R. 287). She was passing two loose stools per day. (R. 287). It was noted that Plaintiff smoked a half a pack of cigarettes a day. (R. 289). Dr. Pletcher concluded that, while Plaintiff might have had gastric Crohn's disease, her symptoms were more compatible with "a more distal process in the small bowel and may require a course of steroids." (R. 289).

---

[1] A GAF rating between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.

Plaintiff gave birth to a daughter on August 13, 2006.  (R. 334-39).

On February 17, 2007, Plaintiff was seen in the emergency room with complaints of nausea, vomiting, and abdominal pain.  (R. 342-45)  Dr. Pletcher reported that she had been on no medications, had not been seen for follow-up for Crohn's disease, and had not followed up with his office "despite previous care and recommendations."  (R. 343).  He added that she had "a history of noncompliance.  Medically, [she] has not followed up on promises made to our office for minimal pain med and has not made good on any promise made in writing or verbally over the past year and a half."  (R. 343).  Furthermore, Dr. Pletcher noted that Plaintiff's bowel obstruction was exacerbated by chronic smoking one pack of cigarettes a day, and that her medical course was complicated by noncompliance and lack of follow-up.  He opined that Plaintiff was at risk for a complicated medical course if she did not have a better plan for medical care than as-needed steroid use.  (R. 344-45).  She was admitted to the hospital, and subsequently discharged on February 24, 2007, with a diagnosis of a low-grade blockage and was slowly tapered off of steroids; she was advised to eat a low roughage diet.  (R. 342).

On April 7, 2007, Plaintiff was hospitalized with acute small bowel obstruction, nausea, and vomiting.  (R. 367-69).  Dr. Pletcher noted that Plaintiff had done relatively well since her first surgery but that her care was hampered by compliance issues, poor follow-up issues, and self-limiting therapy because of her pregnancy, as well as chronic tobacco use which exacerbates Crohn's disease.

(R. 369). On April 12, 2007, Plaintiff was hospitalized with a high grade partial small bowel obstruction, and it was recommended that she undergo a exploratory laparotomy. (R. 362-63). Dr. Shedd performed a distal small bowel and right colon resection with primary anastomosis. (R. 364-65).

Following complications, including postoperative tachycardia, leukocytosis, increasing abdominal pain, and intra-abdominal sepsis, she was taken back to surgery on April 17, 2007, where the anastomosis was taken down and an ileostomy was performed. (R. 356-59). The ileostomy was taken down during a hospital stay from June 13, 2007, to June 20, 2007. (R. 404, 406-07). She was restricted to no lifting more than 15 pounds for six weeks. (R. 404).

By July 9, 2007, she was still doing "reasonably well" and was having three to four stools daily. Dr. Shedd told her to use Imodium as needed for diarrhea and to avoid lifting greater than 15 to 20 pounds. (R. 300).

On August 7, 2007, Plaintiff returned to Dr. Shedd for follow-up of her ileostomy take-down; she denied any complaints and was tolerating regular food without nausea, vomiting, or abdominal pain. (R. 298). She reported having two stools daily. Dr. Shedd released her to "full activity." (R. 298).

On August 12, 2007, she went to the emergency room with a complaint of abdominal pain, which she said had started two weeks earlier. (R. 415). She was discharged home with a clinical impression of abdominal pain – acute, and ovarian cyst. (R. 416).

### 2. State Agency Review

On January 12, 2006, Antoinette Dobson, M.D., completed a Physical Residual Functional Capacity Assessment form for the State agency. (R. 225-32). Dr. Dobson opined that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry ten pounds. (R. 226). Plaintiff could stand/walk and sit for about six hours each during an eight-hour workday. (R. 226). The doctor further indicated that Plaintiff could occasionally stoop, kneel, crouch, crawl, and climb, and could frequently balance. (R. 227). Dr. Dobson found no additional limitations.

On March 16, 2006, Joseph Pressner, Ph.D., completed a Psychiatric Review Technique form for the State agency. (R. 250-63). Plaintiff had mild restriction of activities of daily living, mild difficulty in maintaining social functioning, and mild difficulty in maintaining concentration, persistence, and pace. (R. 260). Based on a review of Plaintiff's claim file, including Dr. Brown's consultative examination report (R. 262), Dr. Pressner concluded that Plaintiff did not have a severe mental impairment. (R. 250).

### III. Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes

that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this Court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the Court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

### IV.  Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that she suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform her past relevant work; and (5) is unable to perform any other work existing in significant numbers

in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

## V.  The ALJ's Decision

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date and that Plaintiff was insured for DIB through September 30, 2005. (R. 17). The ALJ continued by finding that, in accordance with 20 C.F.R. § 404.1520, Plaintiff had three impairments that are classified as severe: Crohn's disease status post November 28, 2001 ileocectomy, April 11, 2007 laparotomy with distal small bowel resection, and June 13, 2007 ileostomy take-down; cognitive disorder, not otherwise specified; and borderline intellectual functioning. (R. 18). The ALJ concluded that none of these impairments met or substantially equaled any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18). The ALJ determined that Plaintiff's testimony was not fully credible. (R. 22). The ALJ then found that Plaintiff retained the following RFC: lift/carry/push/pull ten pounds occasionally and five pounds frequently; stand and/or walk for two hours in an eight-hour workday; occasionally stoop, kneel, crouch, or climb stairs/ramps; never crawl or climb ropes, ladders, or scaffolds; only simple repetitive tasks with short and simple instructions; and no more than routine changes in work setting or duties and only simple work-related decisions. (R. 18-19). The ALJ determined that Plaintiff had no past work, but could still perform a significant number of jobs in

the regional economy, including jobs as general office clerk, bookkeeper/ accountant clerk, receptionist, and production worker. (R. 24). The ALJ, therefore, concluded that Plaintiff was not under a disability. (R. 25).

### VI. Issues

Plaintiff has raised three issues. The issues are as follows:

1. Whether the ALJ's hypothetical questions were proper.

2. Whether the ALJ's credibility determination is patently wrong.

3. Whether the ALJ failed to give proper weight to statements made by Plaintiff's mother.

**Issue 1:    Whether the ALJ's hypothetical questions were proper.**

Plaintiff's first argument is that the ALJ committed error by failing to include Plaintiff's need for restroom breaks in his hypothetical questions to the VE. It is true that hypothetical questions "posed by the ALJ to the VE must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala,* 19 F.3d 329, 337 (7th Cir. 1994). Plaintiff claims that she has to visit the restroom every ten minutes all day due to diarrhea and vomiting. (R. 510-11). However, there is no evidentiary support for the need for such frequent restroom visits. Plaintiff alleges disability since January 1, 2001. In January 2002, Plaintiff was having only two soft stools per day and reported no nausea or vomiting. (R. 155). In September 2002, Plaintiff's Crohn's disease was in remission, and she reported no nausea or vomiting. (R. 160). In June 2005, Plaintiff reported diarrhea four to six times a

day but this was after a meal at Taco Bell and there were also questions about whether well water available at the home might be contributing to her illness. (R. 163). In April 2006, during her pregnancy, Plaintiff was passing two loose stools per day and experiencing three or four vomiting episodes a day. (R. 287). And, in July 2007, Plaintiff reported three to four loose stools (R. 300), and in August 2007, two stools daily (R. 298). None of this medical evidence supports Plaintiff's assertion that she was actually visiting the restroom every ten minutes. Such a pattern of restroom visits would amount to 48 times during an eight-hour work period. Because there is no evidentiary support for such frequent restroom visits, the ALJ did not err by failing to include this limitation in his hypothetical questions to the VE.[2]

**Issue 2:     Whether the ALJ's credibility determination is patently wrong.**

Plaintiff also argues that the ALJ conducted a flawed analysis of her credibility. An ALJ's credibility determination will not be overturned unless it is "patently wrong." *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000). However, here the ALJ's "credibility" decision is not only an analysis of Plaintiff's credibility, but also an evaluation of Plaintiff's complaints of pain. Therefore, the ALJ must

---

[2]Plaintiff's counsel did elicit from the VE that bathroom breaks which exceeded once per hour in an eight-hour work shift would disqualify Plaintiff from the jobs she is otherwise capable of performing. (R. 530-31). However, the medical evidence described above does not show that Plaintiff's condition caused her to use the restroom with that frequency on a continuous basis. Only Plaintiff's own testimony, and that of her mother during Plaintiff's pregnancy, establishes this frequency of breaks at the disqualifying level. For the reasons discussed below, the ALJ was not required to accept that testimony.

consider SSR 96-7p, the regulation promulgated by the Commissioner to assess and report credibility issues, as well as 20 C.F.R. § 404.1529(c)(3).

SSR 96-7p states that there is a two-step process that the ALJ engages in when determining an individual's credibility:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms.  The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms.  If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, *the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.  This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.*  This requirement for a finding on the credibility of the individual's statements about symptoms and their effects is reflected in 20 CFR 404.1529(c)(4) and 416.929(c)(4).  These provisions of the regulations provide that an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the

> individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.

SSR 96-7p (emphasis added; footnote omitted). SSR 96-7p further provides that the ALJ's decision regarding the claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

Moreover, 20 C.F.R. § 404.1529(c)(3) states that when a claimant's subjective individual symptoms, such as pain, are considered, several factors are relevant including: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

In this case, the ALJ's credibility determination can be found in the record at pages 22-23. The ALJ examined many of the factors listed in 20 C.F.R. §

404.1529.  Specifically, the ALJ noted that Plaintiff's activities of daily living were not consistent with her complaints of disabling symptoms.  Additionally, the ALJ noted that Plaintiff's symptoms were exacerbated by:  (1) her diet, such as an episode where she experienced diarrhea and vomiting after eating Taco Bell; (2) a pregnancy; and (3) failure to adhere to prescribed treatment.  The ALJ also noted that when Plaintiff was taking her medication for Crohn's disease, it was generally well controlled.[3]  While this was not a perfect credibility determination, it was clearly not patently wrong.  The ALJ cited ample reasons for finding Plaintiff not fully credible.  And, while the ALJ did not go into great detail about Plaintiff's noncompliance, the Court especially notes that the records from Dr. Pletcher during February and April 2007 indicate that Plaintiff's noncompliance was rather egregious, including continuing to be a chronic smoker, failing to follow-up, and self-limiting her therapy.  Such noncompliance is indicative of an impairment that is not as severe as Plaintiff claimed it to be.

**Issue 3:    Whether the ALJ failed to give proper weight to statements made by Plaintiff's mother.**

Finally, Plaintiff claims that the ALJ erred by failing to adopt all of the limitations noted by Plaintiff's mother, Delores Redding.  (R. 126-36).  However,

---

[3]Plaintiff argues that the ALJ failed to take into consideration her lack of medical insurance/Medicaid, as well as her mental impairment, as explanations for why she had not continued to pursue ongoing treatment.  (Brief in Support of Disability Claim at 9, 12).  However, there is no objective medical evidence to support a conclusion that her mental impairments have ever interfered with her attempts to pursue medical treatment.  And, there is no objective proof that supports Plaintiff's assertion that she was unable to afford medical treatment.  Plaintiff has a seven-year trail of medical records documenting the treatment of her Crohn's disease that includes three surgeries and many hospital stays.

the report from Ms. Redding was completed on February 23, 2006. (R. 136). At that point, Plaintiff was 12 weeks pregnant. (*See* R. 325-33 indicating that on March 8 she was 14 weeks pregnant). Just two weeks later Plaintiff was diagnosed with probable severe morning sickness. (R. 327). Hence, the report from Ms. Redding is not indicative of Plaintiff's impairments from her alleged onset date in 2001 to present, but was rather a snapshot of Plaintiff's condition early in her pregnancy. In fact, one of the most recent medical records from Dr. Shedd in August 2007 indicated that Plaintiff was only having two stools daily, and Plaintiff was released to full activity. (R. 298). Given the fact that Ms. Redding's statements were during Plaintiff's pregnancy and were not supported by the objective medical evidence of record, the ALJ was free to reject this evidence.

### VII. Conclusion

Plaintiff clearly struggles with a very difficult medical condition known as Crohn's disease. The degree to which this affects her is difficult to ascertain. Were this Court able to substitute its own judgment for that of the Commissioner, the outcome of this case might be different. However, this we are unable to do.

The ALJ's decision is supported by substantial evidence. The ALJ asked a proper hypothetical question to the VE that incorporated all of Plaintiff's impairments. The ALJ's credibility determination was also not patently wrong. Finally, the ALJ was not obligated to accept the statements of Plaintiff's mother.

Therefore, the decision of the Commissioner of the Social Security Administration is **AFFIRMED.**

  **SO ORDERED** the 30th day of August, 2010.

                       _____
                       William G. Hussmann, Jr.
                       United States Magistrate Judge
**Electronic copies to:**              Southern District of Indiana

Steven K. Robison
MONTGOMERY ELSNER & PARDIECK
srobison@meplegal.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov